IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL JOHN SUTTON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 10 C 8137 |
| WEXFORD HEALTH SOURCES, INC. and PARTHASARATHI GHOSH, | ) Magistrate Judge Daniel G. Martin |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Darryl Sutton, an inmate at Stateville Correctional Facility, alleges that Defendants Wexford Health Source, Inc. and Dr. Parthasarathi Ghosh (collectively "Defendants") violated his Eighth Amendment rights by acting with deliberate indifference to the severe pain and distress caused by his degenerative joint disease. Mr. Sutton engaged rheumatologist Dr. Najia Shakoor as an expert witness to testify on the severity of Mr. Sutton's reported pain and to opine that Mr. Sutton suffered unnecessary harm as a result of alleged delays in receiving his medications. Defendants have filed a Daubert Motion to Bar Dr. Najia Shakoor [119]. District Judge Nordberg referred the motion to the undersigned Magistrate Judge for consideration and resolution. For the reasons and to the extent stated below, Defendants' Motion to Bar is denied.

Mr. Sutton designated Dr. Shakoor as an expert witness to offer five related opinions regarding Mr. Sutton's chronic musculoskeletal pain: (1) Mr. Sutton suffered chronic musculoskeletal pain, (2) his pain experience was "consistent of someone with moderate to severe pain," (3) he was prescribed medications to treat musculoskeletal pain, (4) the absence of receiving his pain medications led to avoidable increases in his pain severity and suffering, and (5) there is no apparent medical reason for him not to have received his medications. Shakoor Report at 2. Defendants do not contest Dr. Shakoor's qualifications. Rather, they challenge her methodology.

Defendants contend that the methodology supporting Dr. Shakoor's conclusions fails to meet the criteria for admissibility under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993).

## DISCUSSION

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 allows the use of expert testimony, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The Supreme Court has held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. The trial court is obligated to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Advisory Committee Note to 2000 Amendments to Fed. R. Evid. 702. "[T]he rejection of expert testimony is the exception rather than the rule." Id. As the Supreme Court recognized in Daubert, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595. Mr. Sutton, as the proponent of the expert testimony here, "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Advisory Committee Note to 2000 Amendments to Fed. R. Evid. 702. With these principles in mind, the Court examines Defendants' challenges to

Dr. Shakoor's opinions.

Defendants first contend that Dr. Shakoor's methodology is fatally flawed because it is based upon nothing more than Mr. Sutton's version of the facts. In accepting Mr. Sutton's theory that he was without pain medications for 239 days, Defendants argue that Dr. Shakoor did not use the same intellectual rigor that she would use in her private practice. The Court disagrees. Dr. Shakoor's opinions are based on her education and expertise, her clinical experience, and her review of this case and associated records. Dr. Shakoor Report at 2. Dr. Shakoor is an Associate Professor of Medicine and a board-certified rheumatologist. Id. at 1. Her research focuses on osteoarthritis (degenerative arthritis), pain and neuromechanical aspects of osteoarthritis. Id. In her clinical practice, Dr. Shakoor sees patients with all types of rheumatological and musculoskeletal conditions. Id. In reaching her opinions in this case, Dr. Shakoor relied on Mr. Sutton's Second Amended Complaint and the following medical records primarily from November 2003 through June 2012: SUT00001 to SUT00012, SUT00016 to SUT00018, SUT00051 to SUT00056, SUT00070, SUT00083, SUT00121, SUT00147 to SUT00150, SUT00159 to SUT00161, SUT00294, SUT00366, SUT00379 to SUT00692, and SUT00605 to SUT01198. Id.

In her report, Dr. Shakoor explained the methodology utilized by rheumatologists to measure pain. Shakoor Report at 3. Dr. Shakoor states that the primary measure of pain is that reported by the patient. Id; see also Cooper v. Casey, 97 F.3d 914, 917 (7th Cir. 1996) (stating "this is a case about pain" which is a "uniquely subjective experience."). The report also states that physical exam findings, such as inflammation, swelling or deformity, can occasionally give some additional information on pain severity. Id. In many musculoskeletal pain conditions, however, these physical findings may not be present. Id. Dr. Shakoor indicates that function is also often assessed in order to evaluate pain severity. Id. Lastly, Dr. Shakoor notes that the level of pain severity can be determined based on the consistency and quantity of past pain medication usage. Id. Dr. Shakoor employed this methodology in preparing her expert report.

Dr. Shakoor arrived at her conclusion that Mr. Sutton's pain experience was consistent with someone with moderate to severe pain (Opinion 2), based on:

- Examination of medical records, including x-ray reports from 2004 and 2008 showing evidence of degenerative disease in the cervical spine and right hip, a 2011 MRI evaluation demonstrating straightening of the normal cervical lordosis at the neck, and 2012 x-rays showing degenerative disease of the lumbar spine. Shakoor Reprt at 2.

- Mr. Sutton's reported musculoskeletal pain to medical personnel, consisting primarily of neck, hip, low back and knee pain. Mr. Sutton's complaint of headaches and blurry vision which may be the result of experiencing moderate to severe pain. Shakoor Report at 2, 3.

- Mr. Sutton's regular, repeated request for pain medication, which is appropriate behavior for someone who is dependent on relief of musculoskeletal pain to ease suffering. Shakoor Report at 4.

- Mr. Sutton's complaint that during periods he did not receive his medication, he could not participate in normal activities and had a difficult time ambulating. Shakoor Report at 3.

- A notation in the medical records that on one occasion, Mr. Sutton used excess medication, which is a marker of moderate to severe pain. Shakoor Report at 4.

- The consistency and quantity of Mr. Sutton's pain medication over the years, including his treating physicians' decision to change his prescription from Tylenol to a stronger alternative, Ibuprofen. Id.

Defendants have not shown that these sources of information were inadequate for Dr. Shakoor to opine on the level or severity of Mr. Sutton's alleged pain or that the methodology she used was flawed.

Dr. Shakoor's use of Mr. Sutton's self-reported medical history, among other information, is a medically acceptable methodology for assessing pain severity. "Medical professionals reasonably may be expected to rely on self-reported patient histories." Walker v. Soo Line R. Co., 208 F.3d 581, 586 (7th Cir. 2000); see also Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1020 (7th Cir. 2000) (stating "in clinical medicine, a methodology of physical examination and self-reported medical history employed by [the physician] is generally appropriate."). "Of course, it is certainly possible that self-reported histories may be inaccurate." Walker, 208 F.3d at 586. The

Seventh Circuit has recognized that "[t]here may be cases in which a patient's self-reported history is so patently misleading as to make it unreasonable for an examining physician to place any reliance on it," but this is not such a case. Walker, 208 F.3d at 587 n.3. If Defendants believe there is an insufficient evidentiary basis to go to trial on the medication lapses issues, they should have included such an argument in a summary judgment motion at an earlier junction in this case.

"Experts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence . . . . The question is not whether the opinion is based on assumptions, but whether there is some factual support for them." Richman v. Sheahan, 415 F.Supp.2d 929, 942 (N.D. Ill. 2006). Dr. Shakoor's assumptions that there were some lapses in Mr. Sutton's pain medication does not render her opinions unreliable because it is undisputed that there were lapses in Mr. Sutton's medications. See Doc. 119, p. 4 at ¶ 12 (Defendants admitting that there were a "few times that Plaintiff was without medication"); Dr. Arthur Funk Dep. at 42:7-13 (Q: Have there ever been any instances were he has not been provided either his Ibuprofen or Robaxin to treat that disease? A: It appears that there were some times, yes."). Mr. Sutton admits that the medical records do not match each of the allegations of medication lapses set forth in the current complaint, but Dr. Shakoor's testimony will not be excluded on the ground that Mr. Sutton's self-reported history of medication lapses contained some inaccuracies. Walker, 208 F.3d at 587 n.3 (holding physician's testimony should not have been excluded under Daubert because "his patient's self-reported history contained some inaccuracies.").

Dr. Ghosh's interrogatory answers also confirm that there were some lapses in Mr. Sutton's medication, but Dr. Ghosh claims that Mr. Sutton's lack of diligence is the "true cause" of delays in medication. (Doc. 119-3, pp. 3-6). Dr. Ghosh's discovery responses addressing the length and cause of the medication lapses do not undermine Dr. Shakoor's assumption that there were some lapses in medication. Any inaccuracies in the information Dr. Shakoor relied upon may be adequately challenged on cross-examination. As the Seventh Circuit has explained, "[i]n situations

in which a medical expert has relied upon a patient's self-reported history and that history is found to be inaccurate, district courts usually should allow those inaccuracies in that history to be explored through cross-examination." Walker, 208 F.3d at 586; Cooper, 211 F.3d at 1021 (recognizing that "the accuracy and truthfulness of the underlying medical history is subject to meaningful exploration on cross-examination and ultimately to jury evaluation."). Defendants are also free to present evidence that Dr. Shakoor relied on inaccurate information to call her conclusions into question.

Defendants take issue with the fact that Dr. Shakoor did not perform a complete review of Mr. Sutton's medical records to determine if he was "truly out of the subject medications as he alleged" in his Second Amended Complaint. It is clear from her report that Dr. Shakoor was not asked to independently verify whether there were lapses in Mr. Sutton's pain medication. Rather, Mr. Sutton offers Dr. Shakoor as an expert on the harm suffered by a patient such as Mr. Sutton without the prescribed medications. While Dr. Shakoor may not have reviewed all of Mr. Sutton's medical records, an expert is not required to review all of the underlying facts. Rule 702 requires only that expert testimony be based on "sufficient underlying 'facts or data.'" Advisory Committee Notes to 2000 Amendments to Fed. R. Evid. 702. Thus, "[t]he question is whether the expert considered *enough* information to make the proffered opinion reliable." Charles Alan Wright & Victor James Gold § 6266 at 83 (Supp.2013). The Court is satisfied that Dr. Shakoor's opinions are based on sufficient relevant records to make her proffered opinions reliable.

Defendants further complain that Dr. Shakoor ignored Dr. Ghosh's thirteen page Supplemental Interrogatory Answers "which specifically disputed Plaintiff's claims that he was without medications" as he alleged in the Second Amended Complaint. (Doc. 119 at 2). Defendants assert that a review of Dr. Ghosh's interrogatory answers "surely would have impacted her opinion as to the severity and time frame of Plaintiff's alleged pain." Id. at 15. Dr. Shakoor's failure to address Dr. Ghosh's interrogatory answers in her report goes to the weight that a jury will

assign her testimony and not its admissibility. In any event, after drafting her report, Dr. Shakoor reviewed Dr. Ghosh's interrogatory answers during her deposition at the direction of Defendants. Shakoor Dep. at 81:3-15. After reviewing Dr. Ghosh's interrogatory answers, Dr. Shakoor testified that her opinions had not changed. Id. at 138:11-21. Dr. Shakoor stated that her opinions about Mr. Sutton's pain severity and the benefits of pain medication do not depend on the frequency or cause of the medication lapses. Id. at 125:13-126:1, 138:11-21. Based on her review of the medical records and in light of her medical expertise, it is Dr. Shakoor's opinion that during August 2010 through December 2011, Mr. Sutton experienced chronic moderate to severe musculoskeletal pain, which would increase without pain medication. Shakoor Report at 2-4; Shakoor Dep. at 125:1-12, 145:1-7. At her deposition, Dr. Shakoor confirmed that as few as 10 days without pain medication would result in "avoidable increases in [Mr. Sutton's] pain severity and suffering." Shakoor Dep. at 164:4-13.

Next, Defendants argue that Dr. Shakoor's first and third opinions will not help the trier of fact understand Mr. Sutton's condition. Dr. Shakoor opined that "Mr. Sutton suffered chronic musculoskeletal pain" (Opinion 1) and "was prescribed medications to treat musculoskeletal pain" (Opinion 3). Defendants assert that these "opinions" are undisputed facts in the case. The law does not support exclusion on this basis. Mr. Sutton explains that Dr. Shakoor will testify regarding these two uncontested opinions to support her other three opinions which are contested. In this sense, Dr. Shakoor's testimony as to these matters is relevant and helpful to the trier of fact. Even if this testimony could be characterized as factual, Dr. Shakoor is free to lay a factual foundation for her contested opinions.

As to Dr. Shakoor's second opinion that Mr. Sutton's pain experience was "consistent of someone with moderate to severe pain," Defendants contend that complaints of pain are "within the grasp of any lay person" and therefore not permissible expert testimony. (Doc. 137 at 5). Defendants rely on Ledford v. Sullivan, 105 F.3d 354, 359-60 (7th Cir. 1997), to show that Mr.

Sutton's alleged symptoms of body aches, pains and headaches are well within the grasp of lay jurors and do not require the use of an expert. Ledford is not directly on point with this case and does not persuade the Court that, under the circumstances here, Dr. Shakoor's testimony is inadmissible. Ledford addressed whether a court-appointed expert witness was necessary for the proper presentation of a claim of deliberate indifference. The plaintiff inmate in Ledford argued that the district court abused its discretion by failing to order the appointment an expert witness pursuant to Federal Rule of Evidence 706 to testify as to the prison officials deliberate indifference to his serious medical needs when there was an eleven day delay in the inmate receiving his anti-depressant medication. The Seventh Circuit explained that given the particular factual issues in that case, an expert was not required to evaluate the defendants' subjective belief which is the first element of the test for deliberate indifference. Id. at 359. The Ledford court also determined that the jury could comprehend whether the plaintiff inmate had serious medical needs (the second element of a deliberate indifference claim) without the aid of an expert because the symptoms which plaintiff allegedly experienced (*i.e.*, nausea, dizziness, vomiting, a crawling sensation on his skin, unspecified emotional and mental regression, and depression) when deprived of his medication were not beyond a lay person's grasp. Id. at 359-60.

The fact that the plaintiff in Ledford could establish the consequences of a delay in treatment without the use of a court-appointed expert because his alleged symptoms were not beyond a lay person's grasp does not mean that expert testimony on whether the delay caused additional harm is "superfluous," as Defendants contend. (Doc. 137 at 5). In fact, the defendant prison officials in Ledford were permitted to offer the named defendant doctor and a privately-retained expert at trial to testify that "the discontinued use of Zoloft produced minimal, if any, side effects." Id. at 356. Unlike the plaintiff in Ledford, Mr. Sutton has not asked the court to order the appointment of an expert witness. Ledford is also distinguishable because it did not discuss the "verifying medical evidence" requirement in delayed treatment cases. The Seventh Circuit has

required the plaintiff in delayed treatment cases to "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." Williams v. Liefer, 491 F.3d 710, 715 (7th Cir. 2007). Dr. Shakoor's fourth opinion that absences in Mr. Sutton's pain medication led to "avoidable increases in his pain severity and suffering" is helpful to the fact-finder's determination of whether the delay caused additional harm and satisfies the "verifying medical evidence" requirement in this type of case.

The rationale of Ledford also does not preclude Dr. Shakoor's second opinion that Mr. Sutton's experience is "consistent with moderate to severe pain." Mr. Sutton's case is closer to Heard v. Illinois Dep't of Corrections, 2012 WL 2524748 (N.D. Ill. June 29, 2012), than Ledford. Heard concluded that a doctor could opine that the medical treatments the plaintiff inmate received were consistent with an individual who is suffering pain. In Heard, Judge Kendall largely denied a motion brought by Wexford, Dr. Ghosh, and others to preclude expert testimony about the plaintiff inmate's pain. Id., at *4. The district court permitted expert testimony about the inmate's pain as long as the expert did not vouch for the inmate's credibility. Id. "Dr. Glasser may not testify that, based on his expert opinion, Heard suffered pain" because "an expert cannot testify as to credibility issues." Id. The court held that while an expert could not testify that an inmate has suffered pain, "[h]e can state, however, that the medical treatments Heard received are *consistent* with an individual who is suffering pain." Id. (emphasis added). The court also permitted expert testimony that the inmate's pain was "not necessary given the medical procedures and treatments usually available for his symptoms and pain." Id.

Dr. Shakoor's second and fourth opinions track the Heard case's holdings. Dr. Shakoor's second opinion does not state that Mr. Sutton suffered pain, but rather uses the language approved in Heard: "[Mr. Sutton's] pain was *consistent* of someone with moderate to severe pain." Based on her professional medical experience treating patients with rheumatological and musculoskeletal conditions, Dr. Shakoor can testify that Mr. Sutton's experience is consistent with an individual who

is suffering moderate to severe pain. As in Heard, Dr. Shakoor cannot, and does not, opine as to the level of pain Mr. Sutton actually experienced. Dr. Shakoor can also provide expert testimony about avoidable pain. Dr. Shakoor's fourth opinion that absences in Mr. Sutton's pain medication led to "avoidable increases in his pain severity and suffering" tracks the expert testimony permitted in Heard that the inmate's pain was "not necessary" given available treatments.

Defendants' final objection is that Dr. Shakoor improperly seeks to testify as to an ultimate issue of fact. Mr. Sutton's Response to the Motion to Bar explained that Dr. Shakoor's testimony at trial would be offered "to opine on the severity of Mr. Sutton's pain to address whether he had an "objectively serious medical condition,' as required under Section 1983." (Doc. 126 at 1). Defendants quote this statement in their reply brief to argue that Dr. Shakoor cannot "opine as to an ultimate issue of fact." (Doc. 137 at 13). The Court assumes that Defendants are challenging Dr. Shakoor's second and fourth opinions about Mr. Sutton's pain severity and the harm caused by the alleged delay in receiving medications, as Defendants fail to specify which opinion(s) they challenge on this basis.

An expert opinion in a civil case is not objectionable merely because "it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). "An expert's testimony frequently gives rise to 'inferences' that bear on the ultimate issue. Otherwise, it is doubtful that the expert's testimony would be helpful to the jury." U..S. v. Diekhoff, 535 F.3d 611, 620 (7th Cir. 2008) (citations omitted). For example, in Heard, the district court allowed the inmate's expert to testify as to existing standards for medical care and opine on how the treatment the inmate received departed from those standards. Heard, 2012 WL 2524748, at *5. The Heard court did not permit the expert to testify that defendants acted with deliberate indifference or that defendants' failure to provide care was "willful and wanton," a legal standard that is "'remarkably similar' to the deliberate indifference standard." Id.; Williams v. Rodriguez, 509 F.3d 392, 405 (7th Cir. 2007).

Dr. Shakoor's second and fourth opinions do not comment on the ultimate issue of deliberate indifference but rather concern the severity of a medical need and the unnecessary harm caused by the alleged delays in receiving his medications. These opinions are relevant to Mr. Sutton's deliberate indifference claim. To establish the objective element of the deliberate indifference test, Mr. Sutton must demonstrate that he had a serious medical condition. "Prison physicians will be liable under the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health." Burns v. Fenoglio, 525 Fed.Appx. 512, 515 (7th Cir. June 3, 2013). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997). Further, a condition is objectively serious if "failure to treat a prisoner's condition could result in further significant injury or unnecessary and wanton infliction of pain." Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008). In a deliberate indifference case based upon a delay in receiving medication, the relevant issue is not whether the underlying condition is serious but rather the medical consequences of a delay in receiving in such medication. Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir. 2013); Williams, 491 F.3d at 715 (holding "plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.").

Defendants contest the seriousness of Mr. Sutton's condition. Dr. Ghosh and Wexford (through its corporate representative, Dr. Arthur Funk) take the position that Mr. Sutton's degenerative joint disease is "mild." (Doc. 126, Exh. 2 at 207:20, Exh. 3 at 37:23-38:1). Dr. Shakoor's testimony that Mr. Sutton's pain experience was consistent of someone with moderate to severe pain and that the absence of receiving his prescribed pain medications led to avoidable increases in his pain severity and suffering (Opinions 2 and 4) satisfies the requirement of "verifying medical evidence" that the alleged delays in treatment caused harm. Williams, 491 F.3d at 715

(holding "[c]learly, expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement."); see also Jackson, 733 F.3d at 790 (noting that to determine the effect on the plaintiff's health of a temporary interruption in medication, the district judge could have appointed a neutral expert under Federal Rule of Evidence 706 or insisted that the plaintiff's lawyer obtain an expert's affidavit).

Finally, in the conclusion of their reply brief, Defendants seek new relief not requested in their Motion to Bar Dr. Shakoor. If the Court does not bar Dr. Shakoor's opinions in part or in whole, Defendants ask that they be allowed to re-depose Dr. Shakoor or to permit them "to produce their own expert to counter Dr. Shakoor's remaining opinions." (Doc. 137 at 14). Defendants claim that Plaintiff's counsel raised "baseless" and "unwarranted" attorney-expert communications objections at Dr. Shakoor's deposition which denied them the opportunity to fully explore Dr. Shakoor's opinions. As a result of these objections, Defendants argue that they did not learn of the true scope of Dr. Shakoor's opinions until Plaintiff's Response to the Motion to Bar.

Defendants fail to explain why a second deposition of Dr. Shakoor is necessary. Federal Rule of Civil Procedure 26(b)(4)(C) "provide[s] work-product protection for attorney-expert communications regardless of the form of the communications," except for communications that (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed. Fed. R. Civ. P. 26(b)(4)(C); Advisory Committee Notes to the 2010 Amendments. The Court has reviewed the testimony cited by Defendants. (Doc. 119, pp. 8-10). There has been no showing that the requested testimony is not entitled to work-product protection under Rule 26(b)(4)(C). As Mr. Sutton's counsel explained in an email to defense counsel, "no [attorney-expert] objections was made when [defense counsel] asked Dr. Shakoor about what work she performed or did not perform." (Doc. 137, Exh. A). Objections were raised

when defense counsel asked "why" to the extent the questions sought information protected by Rule 26(b)(4)(C). Mr. Sutton states that Dr. Shakoor answered every question to the extent she could do so without providing protected information. Defendants have not shown that Dr. Shakoor refused to provide any information permitted under the three exceptions of Rule 26(b)(4)(C). Nor have Defendants identified any specific non-protected information they would seek to elicit at a second deposition that was not already covered at Dr. Shakoor's deposition. Moreover, Defendants took Dr. Shakoor's deposition on June 7, 2013 and had until June 27, 2013, the close of expert discovery, to file a motion to compel regarding the privilege objections made during the deposition. Defendants never moved to compel Dr. Shakoor to answer the objected-to questions. Defendants cannot complain about the objections now for the first time in a Daubert motion.

Defendants' argument that it would somehow be unfair to deny them the right to counter Dr. Shakoor's opinion on the severity of Mr. Sutton's pain with their own expert is also unpersuasive. The Court agrees with Mr. Sutton that Defendants made a deliberate strategic decision to proceed without an expert. Defendants were made aware of Dr. Shakoor's opinions on April 25, 2013, when Mr. Sutton designated her and provided her report. Defendants had ample opportunity to name their own rebuttal expert by July 29, 2013 (doc. 109) but made a tactical decision not to designate their own expert during the expert discovery period. Before the Motion to Bar was filed, Defendants informed the Court that they did not "need" an expert regardless of the outcome of their Daubert challenge. (Doc. 141 at 6). At the August 8, 2013 hearing before this Court, Defendants stated that they "intend[ed] to file a Daubert motion. We did not, therefore, disclose our own expert and don't intend to do so." Id. at 7. Defendants explained that they did not "think it necessarily needs an issue for expert discovery. And we believe that even if their expert can survive a Daubert motion, we'd poke enough holes at their use of the expert. . . . [even] if their expert stands, I'm still able to cross-examine the expert a trial. . . . So we just don't think we need an expert at this point." Id. Defendants will be able to cross-examine Dr. Shakoor at trial and

present evidence by their own witnesses to rebut the opinions of Dr. Shakoor. Defendant Ghosh and Dr. Arthur Funk, a regional medical director at Wexford and its corporate representative in this case, have both testified that Mr. Sutton's degenerative joint disease is "mild." (Doc. 148 at 6). Defendants' desire at this stage of the litigation to implement a new expert-witness strategy is not good cause for reopening expert discovery.

Contrary to Defendants' assertion, Dr. Shakoor's opinions have not changed since Defendants filed their motion to bar. In response to Defendants' argument in their motion to bar that Dr. Shakoor was improperly verifying the alleged pain medication lapses without reviewing all the medical records, Mr. Sutton's counsel explained by email: "[T]he scope of Dr. Shakoor's work was limited to providing an opinion about Sutton's pain and whether pain medication would alleviate that pain. The scope of Dr. Shakoor's work did not include identifying pain medication lapses." (Doc. 137, Exh. A). In his response brief, Mr. Sutton likewise explained: "Dr. Shakoor is not providing any expert opinions on the duration or causes of the lapses in pain medication." (Doc. 126 at 6). The Court will not reopen expert discovery because the scope and basis of Dr. Shakoor's opinions have not changed and were available to Defendants throughout the expert discovery period.

**E N T E R:**

*[signature: Daniel G. Martin]*

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: February 12, 2014**